DECISION
Brian T. McCoy, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas for three counts of felonious assault, a violation of R.C. 2903.11. We affirm.
On September 12, 1998, John and Carolyn Lodahl were married. At approximately 6:00 P.M., the Lodahl's returned to their home to change their clothes, unload items from their wedding reception, and prepare for their honeymoon. Also present at their home was Greg Alliff, a friend of the Lodahl's; Jeremy Plowman, Carolyn Lodahl's son; and Amber Dolby, Carolyn Lodahl's sister. At the time, Joe McCoy and his two sons, Mike and appellant, lived next door to the Lodahls.
John Lodahl testified that he heard someone from the McCoy residence yell "Hey, Amber. Come here. I want to talk to you." John stated that after Amber told him "I don't want to go over there. I don't want to have anything to do with them. * * * I just yelled over, I said, she doesn't want to come over there and have anything to do with you." An argument ensued and John stated Mike ran onto the Lodahl's property carrying a baseball bat yelling, "who do you think you are? I will burn your place down." Mike also took a few swings at John with the baseball bat. The police were contacted, but no arrests were made at that time.
Later that evening at approximately 11:00 P.M., while John and Carolyn were in their car preparing to leave on their honeymoon, John testified that Mike again ran onto their property carrying a baseball bat and hit Greg in the head while he was standing by the Lodahl's car. Two other individuals, later identified by John as appellant and Ron, a friend of the McCoys, chased Greg towards the Lodahl's house. Carolyn testified she saw appellant chasing Greg with a baseball bat and she saw appellant "smashing the windows and doors out of the house."
John stated that after he got out of his car, Joe hit him with a metal pipe, which caused him to fall to his knees. John further testified that Joe and Mike then beat him. John further stated that after appellant stopped chasing Greg, appellant also began to beat him. Carolyn got out of the car and attempted to shield John from being beaten. Carolyn testified that while she was on top of John she was struck on the back of her leg. She further testified that she thought Joe was the person who hit her because when she looked behind her, Joe was the last person she saw "because everybody else had done ran. And * * * he wasn't really running that fast as everybody else." Amy McGhee, a neighbor on the opposite side of the Lodahl's residence, testified that after Carolyn threw herself over John to protect him from being hit by appellant, Joe and Mike "still kept hitting. They hit her."
Appellant was indicted for three counts of felonious assault. Count one alleged that appellant "did knowingly cause serious physical harm to Carolyn Lodhal, (sic) and/or cause or attempt to cause physical harm to Carolyn Lodhal (sic) by means of a deadly weapon, to wit: a metal bat and/or metal pipe[.]" Counts two and three similarly alleged the same actions by appellant towards John Lodahl and Greg Alliff. Appellant, Joe, and Mike were tried together for beating Greg and the Lodahls. A jury found appellant guilty of all three counts of felonious assault. Appellant appeals his convictions and presents the following three assignments of error:
 I. THE TRIAL COURT ERRED IN THAT ITS DECISION IN COUNT ONE OF THE INDICTMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 II. THE TRIAL COURT ERRED IN THAT ITS DECISION IN COUNT ONE OF THE INDICTMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 III.THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
Appellant argues in his first assignment of error that insufficient evidence was presented to support his conviction as alleged in count one of the indictment. Appellant claims that insufficient evidence was presented to show that he hit Carolyn because no one testified that they saw appellant hit Carolyn.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998), 523 U.S. 1125, 118 S.Ct. 1811, following State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1998), 525 U.S. 1077, 119 S.Ct. 816, followingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781 andState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons, at 444.
R.C. 2903.11(A) states:
No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
In the present case, evidence was presented that appellant was attempting to cause physical harm by using a baseball bat. R.C. 2923.11(A) defines a deadly weapon to be "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." A baseball bat when used as a weapon has been found to be a deadly weapon pursuant to R.C.2923.11(A). State v. Harper (Mar. 21, 1991), Cuyahoga App. No. 58269, unreported; State v. Salinas (July 26, 1985), Fulton App. No. F-84-8, unreported. Evidence was also presented showing that appellant used a bat as a weapon against Carolyn. Kathy Kirk, another neighbor, testified that after Carolyn threw herself over John to protect him from being hit by appellant, Joe, and Mike, "[t]hey still kept hitting. They hit her."
Accordingly, after having reviewed the evidence in a light most favorable to the state, we find that sufficient evidence was presented to support appellant's conviction as alleged in count one of the indictment. Even if we were to find that Kirk's testimony was insufficient to support appellant's conviction under count one of the indictment, Kirk's testimony was sufficient evidence to show that appellant aided and abetted Carolyn's attackers. We will discuss this theory in further detail in appellant's second assignment of error. Appellant's first assignment of error is overruled.
Appellant argues, in his third assignment of error, that he was entitled to an acquittal pursuant to Crim.R. 29. At the conclusion of the state's presentation of evidence against appellant, appellant's counsel made a motion to dismiss the charges against him as alleged in count one of the indictment pursuant to Crim.R. 29. The trial court overruled the motion.
Crim.R. 29(A) states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based on the sufficiency of the evidence will be upheld if after viewing the evidence in a light most favorable to the state, the reviewing court finds that any rational factfinder could have found the essential elements of the charge proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421,430, certiorari denied, (1998), 522 U.S. 1128,118 S.Ct. 1078, following Jackson, supra, and Jenks, supra.
We have already found in appellant's first assignment of error that sufficient evidence was presented supporting appellant's conviction for the first count of the indictment. The evidence we based this finding upon was presented during the state's presentation of their case against appellant and prior to appellant's motion to dismiss. Therefore, since the standard of review is the same for insufficient evidence and a trial court's decision regarding a motion for acquittal pursuant to Crim.R. 29(A), we find that the trial court did not err in overruling appellant's motion for an acquittal pursuant to Crim.R. 29. See, also, State v. Buterbaugh (Sept. 16, 1999), Franklin App. No. 98AP-1093, unreported, discretionary appeal not allowed (2000),87 Ohio St.3d 1490. Appellant's third assignment of error is overruled.
Appellant argues in his second assignment of error that his conviction under count one of the indictment was against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, following Clemons, supra.
In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), ___ U.S. ___, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. [Thompkins, at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.]
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Kathy Kirk's testimony that appellant, Joe, and Mike kept hitting Carolyn must be weighed along with Carolyn's testimony that she was only hit once and that she thought Joe McCoy was the person that hit her. It would first appear that Kathy's and Carolyn's testimonies are inconsistent. However, a complete review of the evidence shows that their testimony can be reasonably viewed as being consistent.
Carolyn identified Joe as her assailant based upon the fact that he was the last person she saw. However, during direct examination, Carolyn stated the following:
 Q. Now, immediately after the incident you gave a statement to the police. And during that statement you identify Joe [McCoy] as the individual who struck you?
 A. Yeah, I told them when I looked back he was the last one I seen. I thought he was the one that hit me.
 * * * Q. So your identification is based strictly upon who you saw last?
 A. Basically, yeah, because everybody else had done ran. And he was he wasn't really running that fast as everybody else.
 Q. He was also the oldest. Maybe he's just not as fast as the rest of them?
A. Maybe.
Q. Do you identify him as the assailant?
 A. When I wrote the statement I was a bundle of nerves sitting there up in the hospital, you know, wondering. You know, so when I wrote the statement, you know, I had thought he hit me.
 Q. So it was based upon what you thought, not what you saw?
 A. Right, because I didn't see who hit me. I was down. I was face down. I didn't see. When I got when I felt the blow and turned around, he was the last one I seen.
Therefore, a review of Carolyn's testimony shows that she was unclear about who had hit her based upon her statement that she did not see who had hit her.
Kathy Kirk's testimony is based upon what she saw from her home. When asked whether she saw who hit Carolyn, she stated: "[t]o be honest, at that point the bats were swinging, or clubs were swinging, and all I know is they were hitting." Therefore, according to Kathy's testimony, it is reasonable to conclude that appellant, Joe, and Mike swung bats and/or clubs at Carolyn, but then also conclude, based upon Carolyn's testimony, only one of her assailants hit Carolyn. However, it is not possible to conclusively conclude, based upon the evidence, whether appellant actually struck Carolyn.
Even though the evidence does not conclusively show that appellant struck Carolyn, the evidence does show that appellant "aided and abetted" the other two attackers in the assault of Carolyn.[1] The complicity statute, R.C. 2923.03(A)(2), states that no person, acting with the kind of culpability required for the commission of an offense, shall "[a]id or abet another to commit the offense."
 To "aid" is to assist and to "abet" is to incite or encourage. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act. * * * [I]n order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object.
The state may demonstrate that an accused is guilty of aiding and abetting by direct or circumstantial evidence. Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. State v. Stepp (1997), 117 Ohio App.3d 561, 568-569 (quotations and citations omitted.)
In the present case, evidence that: (1) appellant swung a bat at Carolyn; (2) appellant was seen swinging the bat at Carolyn with Joe and Mike; and (3) Carolyn was struck by a bat or similar object, demonstrates that appellant expressed concurrence and contributed to the unlawful act of felonious assault. Therefore, even after weighing Carolyn's testimony with Kathy Kirk's testimony, we find that appellant's conviction was not against the manifest weight of the evidence based upon the evidence of appellant's complicity to commit felonious assault. Accordingly, after a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See Smith, at 114. Appellant's second assignment of error is overruled.
Appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BRYANT and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] We note that we are allowed to consider whether appellant's conviction for felonious assault was against the manifest weight of the evidence based upon the theory that appellant aided and abetted Carolyn's attackers because the jury received a jury instruction concerning complicity to commit felonious assault by aiding and abetting Joe and Mike McCoy. See State v. Phillips
(Apr. 7, 2000), Lucas App. No. L-99-1071, unreported.